UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
AMIGO SHUTTLE INC. and MICHAEL H.
CONNERY, JR.,

                    Plaintiff,

                                                              22-cv-10361 (PKC)

          -against-                                           OPINION
                                                              AND ORDER


THE PORT AUTHORITY OF NEW YORK
AND NEW JERSEY, KEW T. FLYER INC.,
CHRISTINA CONTUMELIO, SUSAN
WARNER DOOLEY, AMY FISHER and
SHERIEN KHELLA,

                    Defendants.
------------------------------------------------------------x

CASTEL, U.S.D.J.

           This Opinion and Order resolves arguments raised by the parties in their letters

filed after the Court issued the Opinion and Order of March 26, 2024 (the "Opinion").  The

Opinion granted the Port Authority Defendants' motion to dismiss plaintiffs' federal antitrust

claims pursuant to Rule 12(b)(6), Fed. R. Civ. P.  Amigo Shuttle, Inc. v. The Port Authority of

New York and New Jersey, 2024 WL 4628330, at *1 (S.D.N.Y. Mar. 26, 2024).  It concluded

that the Port Authority Defendants are immune to plaintiffs' Sherman Act and Clayton Act

claims under the state-action immunity doctrine, that the Complaint did not plausibly allege an

antitrust injury sufficient to establish plaintiffs' antitrust standing, and that the Complaint's

purported Clayton Act claim cited only to a provision of the Sherman Act relating to actions

commenced by the United States, meaning that the claim did not provide defendants with the

notice pleading required by Rule 8(a), Fed. R. Civ. P.  See id.  Familiarity with the Opinion is assumed.

Defendants Kew T. Flyer Inc. ("KTF") and Christina Contumelio did not move to dismiss the Complaint.  Instead, KTF filed an answer, and Contumelio asserted in a letter-motion that she had not been timely served with process as required by Rule 4(m), Fed. R. Civ. P.  (ECF 31, 41, 44.)

The Opinion observed that "[g]iven the Court's holdings that the plaintiffs do not have antitrust standing as to Counts One and Two and the alternative holding that the Complaint fails to state a claim under Count Two, it appears that plaintiffs have no viable federal claim against the two non-moving defendants, KTF and Contumelio."  2024 WL 4628330, at *9.  It also observed that the Complaint invoked only federal question jurisdiction and asserted supplemental jurisdiction as to three claims brought under New York law.  Id.  Accordingly, the Court ordered plaintiffs to show cause in writing as to why 1.) the holdings with regard to the Port Authority Defendants did not also foreclose plaintiffs' federal antitrust claims against KTF and Contumelio and 2.) the Court should exercise supplemental jurisdiction over the remaining claims brought under New York law.  Id. at *10.  The Court invited defendants to respond to plaintiffs' submission.  Id.

This Opinion and Order resolves the issues raised by the parties in their post-Opinion letters.  As will be explained, the Court concludes as follows.  First, plaintiffs' federal antitrust claims will be dismissed as to KTF and Contumelio because the Complaint does not plausibly allege antitrust standing.  Second, the Court has federal question jurisdiction over plaintiffs' claim asserting that the Port Authority Defendants violated New York's Donnelly Act because the claim implicates the Compact Clause of the United States Constitution, and the

claim will be dismissed because the Complaint does not plausibly allege an injury to competition. Third, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. Fourth, plaintiffs' application for leave to file an amended complaint will be denied, both because they have not shown good cause for their untimely application and because the proposed amendment would be futile.

## THE FEDERAL ANTITRUST CLAIMS AGAINST KTF AND CONTUMELIO WILL BE DISMISSED.

The Opinion concluded that the Complaint failed to allege plaintiffs' antitrust standing to proceed with their claims brought under the Sherman Act and Clayton Act because it did not plausibly allege an injury to competition. See generally Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C., 711 F.3d 68, 75-76 (2d Cir. 2013). It explained that plaintiffs' allegations of antitrust injury "largely consist of legal conclusions that are unsupported by facts that could show an injury to competition in the purported market for flight-crew shuttle bus services at Terminals 4 and 5 of JFK." 2024 WL 4628330, at *8. Rather than describing an injury to competition, the Complaint "attempts to describe a narrow vendetta carried out by the Port Authority Defendants based on a specific 'bias' against [plaintiff] Amigo and in favor KTF, not injury to competition in the market for flight-crew shuttle services." Id.

Plaintiffs' response to the Order to Show Cause does not urge that the Opinion's analysis of antitrust standing ought not apply to KTF and Contumelio, instead emphasizing that plaintiffs should be granted leave to move to amend their complaint. (ECF 47.) For the reasons explained in the Opinion as to the claims against the Port Authority Defendants, the Court now concludes that the Complaint also does not plausibly allege antitrust injury caused by KTF and Contumelio and therefore fails to allege plaintiffs' antitrust standing as to any defendant. At most, the Complaint describes conduct that was hostile to Amigo but does not describe an injury

to competition in the purported market for flew-crew shuttle-bus services at the specific air terminals.  Count One and Count Two will therefore be dismissed as to KTF and Contumelio.

Additionally, as explained in the Opinion, Count Two purports to allege a violation of the Clayton Act, but cited solely to 15 U.S.C. § 4, which is a provision of the Sherman Act that permits the United States to bring claims for injunctive and other equitable relief.  2024 WL 4628330, at *9.  Because Count Two does not identify a violation of the Clayton Act consistent with the notice pleading required by Rule 8(a), it will be dismissed as to KTF and Contumelio.

The letter filed by KTF and Contumelio also references Contumelio's earlier application to dismiss all claims against her based on plaintiffs' failure to timely serve her with process as required by Rule 4(m).  The Opinion reserved decision on the motion.  2024 WL 4628330, at *10 n.5.  That motion will be denied.  A stipulation executed by counsel for both sides provided that "[t]he undersigned counsel for Defendants Christina Contumelio and [KTF] shall accept service of the Summons and Complaint as of January 5, 2023."  (Berman Aff. at 11 (ECF 43).)  On January 6, 2023, plaintiffs' counsel emailed counsel to KTF and Contumelio a fully executed copy of the stipulation.  (Id. at 9-10.)  Plaintiffs' counsel explains that he reasonably believed that Contumelio's attorney had voluntarily agreed to accept service on her behalf, noting that Contumelio's counsel himself proposed that the parties enter into the stipulation.  (Berman Aff. ¶¶ 3-6.)  Plaintiffs' counsel later effectuated personal service upon Contumelio on or about August 15, 2023.  (ECF 39.)  Contumelio's counsel has not explained why further steps were required to effectuate service of process after he stipulated to voluntarily accept service on her behalf, does not urge that Contumelio did not receive notice of the claims

against her and does not point to any resulting prejudice.  The motion to dismiss for untimely service pursuant to Rule 4(m) will be denied.

## THE DONNELLY ACT CLAIM WILL BE DISMISSED AGAINST THE PORT AUTHORITY DEFENDANTS.

The Court will consider whether there is a federal question presented by plaintiffs' assertion of a state law claim under New York's Donnelly Act against the Port Authority Defendants, consistent with the Compact Clause to the United States Constitution. As explained, the Court concludes that it has federal question jurisdiction over the Donnelly Act claim against the Port Authority, an entity created by an interstate compact, and its officers.  But it also concludes that it is not necessary to resolve the ultimate question whether the assertion of the Donnelly Act claim is inconsistent with the Compact Clause because, assuming that the claim would be constitutionally permissible, plaintiffs have failed to state a claim for relief under the Donnelly Act.

### A.  Under the Compact Clause, the Court Has Federal Question Jurisdiction over Plaintiffs' Donnelly Act Claim Against the Port Authority Defendants.

The Port Authority Defendants assert that this Court continues to have federal question jurisdiction to the extent that the Complaint brings a claim against them under New York's Donnelly Act, N.Y. G.B.L. §§ 340-47, modeled on the Sherman Act.  Anheuser Busch, Inc. v. Abrams, 71 N.Y.2d 327, 333 (1988).  They assert that because the Port Authority was formed through an interstate compact approved by Congress, the question of whether they can be liable under the Donnelly Act requires the Court to construe the compact between New York and New Jersey, and therefore implicates the Compact Clause of the United States Constitution, Art. I, Sec. 10, Cl. 3 ("No State shall, without the Consent of Congress . . . enter into any Agreement or Compact with another State. . . .").

The Complaint asserts that this Court has federal question jurisdiction for claims brought under federal law and supplemental jurisdiction over any state law claims. (Compl't ¶¶ 2, 4.) There is no assertion of diversity jurisdiction. Count Three asserts that all defendants violated the Donnelly Act. (Compl't ¶¶ 160-65.)

The Port Authority is a bi-state corporation that was created by a compact between New York and New Jersey and approved by Congress. See, e.g., Helvering v. Gerhardt, 304 U.S. 405, 408 (1938); N.Y. Unconsol. L. §§ 6401, et seq. "[W]here Congress has authorized the States to enter into a cooperative agreement . . . the consent of Congress transforms the States' agreement into federal law under the Compact Clause." Cuyler v. Adams, 449 U.S. 433, 440 (1981); see also Texas v. New Mexico, 144 S. Ct. 1756, 1762 (2024) ("While contractual in nature, an interstate compact is not just a contract, but also a federal statute enacted by Congress that preempts contrary state law.") (quotation marks omitted). "[T]he construction of an interstate agreement sanctioned by Congress under the Compact Clause presents a federal question." Cuyler, 449 U.S. at 438; see also New York v. New Jersey, 598 U.S. 218, 223 (2023) ("The interpretation of the Waterfront Commission Compact – an interstate compact approved by Congress – presents a federal question."); Brooklyn Bridge Park Coalition v. Port Auth. of New York & New Jersey, 951 F. Supp. 383, 388 (E.D.N.Y. 1997) (assertion that Port Authority acted ultra vires required compact construction and therefore demonstrated federal question jurisdiction). Even if a plaintiff has brought only state law claims, an issue of compact construction may arise if raised as a defense or if the plaintiff's "affirmative contention and claim for relief will inevitably require construction of the compact." Mitskovski v. Buffalo & Fort Erie Pub. Bridge Auth., 435 F.3d 127, 135 (2d Cir. 2006).

The Court has been unable to locate any authority holding that federal question jurisdiction necessarily attaches because a party challenges whether state law reaches an interstate-compact entity.  The Port Authority Defendants cite International Union of Operating Engineers, Loc. 542 v. Delaware River Joint Toll Bridge Commission, 311 F.3d 273, 279-80 (3d Cir. 2002), which held that there was federal question jurisdiction over petitioner's claim that the Delaware River Joint Toll Bridge Commission was bound by New Jersey's collective-bargaining laws.  That case turned on an analysis of the compact's text as it related to employees' rights to organize and bargain collectively.  See id. at 274-75, 279-81.  In HIP Heightened Independent & Progress, Inc. v. Port Authority of New York & New Jersey, 693 F.3d 345, 350 (3d Cir. 2012), the Port Authority removed to federal court an action that brought claims under the Americans with Disabilities Act and New Jersey law.  The Third Circuit referenced federal question jurisdiction under the Compact Clause and relied on the language of the compact to conclude that New Jersey's civil rights law did not reach the Port Authority.  Id. at 356-58.

Both the Second Circuit and New York state courts have considered whether a New York statute reaches the Port Authority without reference to the text of the compact or the role of the Compact Clause, focusing on whether the law governs the Port Authority's internal operations or its external conduct.  See Dezaio v. Port Auth. of NY & NJ, 205 F.3d 62, 65 (2d Cir. 2000) ("internal operations of the Authority – unlike its external conduct which is subject to each of the Compact State's health and safety laws – are independent from the unilateral control of either State without the other's concurrence."); Agesen v. Catherwood, 26 N.Y.2d 521, 525 (1970) ("The distinction between the internal operations and conduct affecting external relations of the Authority is crucial in charting the areas permitting unilateral and requiring bilateral State action.  New York and New Jersey have each undoubted power to regulate the external conduct

of the Authority, and it may hardly be gainsaid that the Authority, albeit bistate, is subject to

New York's laws involving health and safety, insofar as its activities may externally affect the

public."); Rosario v. Port Auth. of New York & New Jersey, 179 A.D.3d 516, 516-17 (1st Dep't

2020) ("The Compact Clause of the United States Constitution is not implicated by the

application of such New York workplace safety statutes to the Port Authority work site located

in New York, which does not encroach on federal supremacy.") (emphasis added; internal

citations omitted); Ray v. Port Auth. of New York & New Jersey, 184 A.D.3d 476, 476 (1st

Dep't 2020) ("The Port Authority is subject to New York's laws involving health and safety,

insofar as its activities may externally affect the public. . . . As we recently ruled, '[t]he

Compact Clause of the United Stated Constitution is not implicated by the application of such

New York workplace safety statutes to [a] Port Authority work site located in New York.'")

(quoting Rosario); Lopez v. Port Auth. of New York & New Jersey, 171 A.D.3d 500, 501 (1st

Dep't 2019) (Port Authority not covered by state legislation governing internal operations but is

covered by laws governing activities that "may externally affect the public.") (internal citations

and quotation marks omitted); Wortham v. Port Auth. of New York & New Jersey, 177 A.D.3d

481, 481-82 (1st Dep't 2019) (same).[1]

   The Port Authority Defendants urge that the Donnelly Act claim should be

dismissed both because its statutory text does not expressly mention the Port Authority and

because New Jersey has not concurrently enacted parallel legislation. (Def. Mem. at 16-17;

Reply at 7-8.) Neither their briefing on the motion to dismiss nor their letter-brief asserting

federal question jurisdiction cite any provision of the Port Authority Compact that requires

---

[1] Though it did not reach the issue, the Third Circuit suggested in HIP that it disagrees with the internal-versus-external distinctions used by the Second Circuit and New York courts. See 693 F.3d at 357-58 ("There is no basis in Third Circuit precedent for the internal-external distinction, nor would such a distinction necessarily be well-founded. But we need not consider the matter . . . .").

construction by the Court.  The Port Authority Defendants also do not urge that applying the

Donnelly Act to the Port Authority would improperly preempt federal law or otherwise encroach

on federal supremacy.  See, e.g., Texas, 144 S. Ct. at 1762.

   The Court nevertheless concludes that it has federal question jurisdiction

premised on the Compact Clause.  The arguments of the Port Authority Defendants are impliedly

based on Article III of the Port Authority Compact, which provides that the Port Authority "shall

be a body corporate and politic, having the powers and jurisdiction hereinafter enumerated, and

such other and additional powers as shall be conferred upon it by the legislature of either state

concurred in by the legislature of the other . . . ."  N.Y. Unconsolidated Law § 6404.  Implicit in

the Port Authority Defendants' arguments is that the Donnelly Act does not reach the Port

Authority because the statute cannot be applied consistent with the powers "hereinafter

enumerated" under Article III of the compact.  Accordingly, the Court concludes that it has

federal question jurisdiction over plaintiffs' Donnelly Act claim against the Port Authority

Defendants.

   B. The Donnelly Act Claim Against the Port
     Authority Defendants Will Be Dismissed.

   Having concluded that the Court has federal question subject matter jurisdiction

over the Donnelly Act claim against the Port Authority Defendants, the Court also concludes that

it is not necessary to resolve whether the assertion of the claim is inconsistent with the

Commerce Clause.  This is because plaintiffs' Complaint does not state a claim for relief against

the Port Authority Defendants under New York's Donnelly Act.

   The Sherman Act is the "essentially similar federal progenitor" of New York's

Donnelly Act.  Global Reinsurance Corp. U.S. Branch v. Equitas Ltd., 18 N.Y.3d 722, 731

(2012); accord People v. Rattenni, 81 N.Y.2d 166, 171, (1993) ("The Donnelly Act was

modelled on the Federal Sherman Act of 1890, and thus we have observed that State antitrust law should generally be construed in light of Federal precedent and given a different interpretation only where State policy, differences in the statutory language or the legislative history justify such a result.") (quotation marks and internal citation omitted).  Like the Sherman Act, the Donnelly Act requires a plaintiff to allege an injury to competition.  Global Reinsurance, 18 N.Y.3d at 735; Cenedella v. Metro. Museum of Art, 348 F. Supp. 3d 346, 362 (S.D.N.Y. 2018) ("The standing and antitrust injury analyses under the Donnelly Act mirror those under the Sherman Act.") (Koeltl, J.) (quotation marks omitted).

As discussed in the Opinion, the Complaint does not plausibly allege an antitrust injury under the Sherman Act.  Assuming that the Donnelly Act reaches the Port Authority Defendants, plaintiffs' Donnelly Act claim against them will be dismissed for the same reason.

THE COURT DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION
OVER THE REMAINING STATE LAW CLAIMS.

Plaintiffs' remaining claims are brought solely under state law.  Count Three asserts a Donnelly Act claim against KTF and Contumelio.  Counts Four and Five assert claims of tortious interference with contract against the Port Authority Defendants only.

As noted, the Opinion directed plaintiffs to show cause in writing why the Court should exercise supplemental jurisdiction over any remaining claims brought under New York law and invited all defendants to respond.  2024 WL 4628330, at *10.  The Port Authority Defendants urge that the Court should exercise supplemental jurisdiction because the tortious interference claims against them derive from the same common nucleus of operative facts as the federal claims.  (ECF 48 at 6-8.)  Plaintiffs have stated that if leave to move to amend is not granted, the Court should decline to exercise supplemental jurisdiction because issues of judicial economy do not outweigh the interests that New York courts may have in applying state law.

(ECF 47 at 3.)  KTF and Contumelio do not address the exercise of supplemental jurisdictional. (ECF 50.)  All parties have had an opportunity to be heard on the issue of supplemental jurisdiction.  See Catzin v. Thank You & Good Luck Corp., 899 F.3d 77, 82-83 (2d Cir. 2018).

The Court will decline to exercise supplemental jurisdiction over plaintiffs' state law claims.  A district court "may decline to exercise supplemental jurisdiction over a claim" where "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  District courts are instructed "that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims.'"  Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (ellipsis omitted) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).  The relevant factors are "the traditional 'values of judicial economy, convenience, fairness, and comity . . . .'"  Id. (quoting Cohill, 484 U.S. at 350).  "The Second Circuit takes a particularly strong view that district courts should decline to exercise supplemental jurisdiction in the absence of a 'clearly articulated federal interest.'"  Cummings v. City of New York, 2021 WL 1664421, at *2 (S.D.N.Y. Apr. 28, 2021) (McMahon, J.) (quoting Kolari, 455 F.3d at 123).

None of the relevant factors weighs in favor of the Court exercising supplemental jurisdiction over the remaining state law claims.  This case is only at the pleading stage, and the value of judicial economy, convenience, fairness and comity would not be advanced by federal adjudication of these claims.  "The Court is no more familiar with the facts and legal issues of this case than any court would be at the pleading stage. As a result, this Court lacks any interest in continuing to preside of the resolution of these state law claims, and resolution of the state law claims in state court will avoid 'needless decisions of state law' by a federal court."  Cummings,

2021 WL 1664421, at *3 (quoting <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726 (1966)).

        The Court declines to exercise supplemental jurisdiction as to the remaining state law claims, which will be dismissed.

LEAVE TO MOVE TO AMEND WILL BE DENIED.

        Plaintiffs' response to the Order to Show Cause principally urges that they should be granted leave to file a motion to amend the Complaint pursuant to Rule 15, Fed. R. Civ. P.[2] They state that the amendment would bring a new claim under section 2 of the Sherman Act asserting that "[d]efendants have agreed to and conspired to provide KTF with an unlawful monopoly by locking out all other competitors from the relevant market" and that they "effectuated their conspiracy by denying these competitors permits and demanding contractual terms and conditions that effectively rendered it impossible for [plaintiffs] to compete in the market, constituting a refusal to deal." (ECF 47 at 2-3.)

        Because this Court entered an Order setting a deadline for seeking an amendment to the Complaint that passed without application to amend or a request to extend the deadline, and because plaintiffs' letter to the Court does not make any attempt to satisfy the "good cause" requirement for modification of a scheduling order, plaintiffs' request to amend the complaint will be denied.

        Rule 16(b)(3)(A) provides that a Court's "scheduling order must limit the time to join other parties [or] amend the pleadings . . . ." The Court's Order of March 20, 2023, issued after hearing the parties at a pre-trial conference that day, set a deadline of 21 days hence, <u>i.e.</u>,

---

[2] Plaintiffs' letter describes their proposed amendment in three paragraphs, including case law support for the claim. The Court will treat plaintiffs' request to file a motion to amend as a motion to amend. (ECF 47.) <u>See, e.g.</u>, <u>Lehmann v. Ohr Pharm., Inc.</u>, 2021 WL 5986761, at *1 (2d Cir. Dec. 16, 2021) (summary order).

April 10, 2023.  It is undisputed that the April 10 deadline came and passed without a request for

an amendment or for an extension of the deadline for plaintiffs to do so.

The Court's Order of March 20 did not arise in a vacuum.  The Port Authority

Defendants filed a nine-page, single-spaced pre-motion letter laying out in extensive detail the

basis for their proposed motion to dismiss, including the State Action Immunity doctrine and the

failure to plead antitrust injury.  (ECF 27.)

The undersigned's Individual Practices imposed the requirement on plaintiffs to

state unequivocally whether they wished to amend their complaint:

> If a Pre-Motion Letter seeks to file a motion to dismiss, the party
> responding shall unambiguously state whether he, she or it seeks
> leave to amend. The Pre-Motion Letter and response will be taken
> into account in deciding whether further leave to amend will be
> granted in the event the motion to dismiss is granted. . . .

Individual Practices 3(A)(iv); see also id. 3(A)(v).  Plaintiffs' response stated that they had "no

present intention to amend the Complaint" but purported to reserve the right to do so after

reviewing any decision of the Court.  (ECF 29.)

Thereafter, the Court held a pre-trial conference with the parties.  Among the

purposes of such a conference is to establish "early and continuing control so that the case will

not be protracted because of lack of management" and to "discourage[e] wasteful pretrial

activities."  Rule 16(a), Fed. R. Civ. P.  Rule 16(b)(3)(A), Fed. R. Civ. P., mandates only the

following in a scheduling order following a pre-trial conference: "[t]he scheduling order must

limit the time to join other parties, amend the pleadings, complete discovery, and file motions."

Rule 16(b)(3).

Contrary to plaintiffs' argument, Rule 15 does not control their request to amend.

(See ECF 47 at 2.)  When a scheduling order sets a deadline for seeking leave to amend – as

there is in this case (ECF 32), and which plaintiffs fail to acknowledge – Rule 16(b)(4), Fed. R.

Civ. P., provides that "[a] schedule may be modified only for good cause and with the judge's

consent."  The "good cause" requirement overrides the liberal amendment standard of Rule 15,

Fed. R. Civ. P.  See Parker v. Columbia Pictures Industries, 204 F.3d 326, 340 (2d Cir. 2000)

("We now join these courts in holding that despite the lenient standard of Rule 15(a), a district

court does not abuse its discretion in denying leave to amend the pleadings after the deadline set

in the scheduling order where the moving party has failed to establish good cause."); Sacerdote

v. New York University, 9 F.4th 95, 115 (2d Cir. 2021) ("The period of 'liberal' amendment

ends if the district court issues a scheduling order setting a date after which no amendment will

be permitted.").  A court need not conduct a Rule 15 analysis when there is non-compliance with

Rule 16.  See Perfect Pearl Co. v. Majestic Pearl & Stone, Inc., 889 F. Supp. 453, 457 (S.D.N.Y.

2012) ("[C]ompliance with Rule 16 is a threshold matter which may obviate the Rule 15

analysis . . . .") (Engelmayer, J.).

 The pre-motion letter of the Port Authority Defendants provided plaintiffs with

advance notice of the bases for the anticipated motion to dismiss.  The arguments raised in the

motion to dismiss did not vary from those described in the pre-motion letter.  Having received

detailed notice of the Port Authority Defendants' expected arguments, plaintiffs elected not to

amend their complaint.  They also did not seek leave to move to amend by the date set in the

March 20 Order.  Plaintiffs did not demonstrate "good cause" with the self-serving statement that

they were "not in a position to weigh the practicality and possible means of curing any such

deficiencies without a definitive ruling from the district court . . . ."  (ECF 29 at 8.)

 Even if plaintiffs' request were reviewed under Rule 15, an amendment would be

futile because it is premised on the Port Authority's allegedly anticompetitive permitting

decisions.  Plaintiffs state that defendants entered into a conspiracy to violate the Sherman Act

that was "effectuated . . . by denying . . competitors permits and demanding contractual terms

and conditions" that obstructed plaintiffs from competing.  (EF 47 at 3.)  But as discussed in the

Opinion, the Port Authority's permitting decisions are "'an essential government function'"

derived from its "'controlling and conclusive'" decision-making power over "'all details . . . of

contracts and the operation of air terminals . . . .'"  2024 WL 4628330, at *6 (quoting N.Y.

Unconsolidated L. §§ 6634, 6640).  "The Port Authority has a strong governmental interest in

supervising the ground-transportation services used at its air terminals" and does not act as "a

market participant" when making permitting decisions.  Id.  An amendment premised on the Port

Authority's actions in a conspiracy to deny ground-transportation permits would be futile under

the state-action immunity doctrine.

   Plaintiffs' application to move for leave to amend will therefore be denied.

CONCLUSION.

   Count One and Count Two are dismissed as to defendants KTF and Contumelio.

Count Three is dismissed as to the Port Authority Defendants.  The Court declines to exercise

supplemental jurisdiction over plaintiffs' remaining state law claims.  Plaintiffs' application for

leave to move to amend is denied.

   The Clerk is respectfully directed to enter judgment for all defendants on Count

One and Count Two, and on Count Three as to defendants Port Authority of New York and New

Jersey, Susan Warner Dooley, Amy Fisher and Sherien Khella only.  The Clerk is directed to

close the case.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:  New York, New York
        December 13, 2024